NATIONAL GRANGE MUTUAL INSURANCE COMPANY

*v.*

WYOMING COUNTY INSURANCE AGENCY, INC.

(No. 13187)

Submitted February 6, 1973.     Decided March 20, 1973.

*Bailey, Worrell & Viers, Robert Bailey,* for appellant.

*Sanders & Blue, Fred O. Blue,* for appellee.

SPROUSE, JUDGE:

This case is before the Court upon an appeal from the final judgment of the Circuit Court of Wyoming County, which judgment was entered in favor of the defendant by the trial court, sitting in lieu of a jury, in a civil action instituted by National Grange Mutual Insurance Company, Inc., as the plaintiff, against Wyoming County Insurance Agency, Inc., as the defendant, to recover damages incurred by the plaintiff from a fire loss for which the plaintiff allegedly paid because the defendant accepted an installment payment on an insurance policy which the plaintiff maintains had been cancelled.

The principal questions presented for decision are whether, under the facts and circumstances of this case, a valid contract of insurance between the plaintiff and its insured was in effect and whether the negligence, if any, of the defendant was the proximate cause of the plaintiff's loss.

In April, 1967, the defendant, as the agent of the plaintiff for the purpose of writing fire insurance policies in Wyoming County, issued a policy in the name of the plaintiff to Lizzie Short, covering her home and its contents. The policy was issued for a three-year period and required the payment of annual premiums in the amount of $79.00. Lizzie Short remitted the first premium to the defendant at the time the policy was issued. An employee of the plaintiff company requested that a particular inspection report and a photograph of the building to be insured be forwarded to the plaintiff. He stated that the memorandum requesting the information was returned to him with a written description of the property noted thereon and an accompanying photograph. He then mailed a second memorandum to the defendant, acknowledging the receipt of the photograph and again requesting that the particular inspection form be forwarded to the company. The defendant denies receiving the second memorandum.

The company received no further information from the defendant. Therefore, in June, 1967, a notice of declination was sent to the defendant. The declination notice was defined as a company form letter indicating to the agent that, if compliance with the requested information was not met within the specified time period, the policy would be cancelled. The defendant likewise denies receiving this notice.

On July 7, 1967, the plaintiff mailed a notice to Lizzie Short, the insured, stating that on July 19, 1967, the policy would be cancelled. A certificate of mailing was obtained from the post office at the time the notice was mailed to the insured. The insured and assistant manager of the defendant agency testified that they did not receive any notice of cancellation. The testimony of plaintiff's employee indicates that he directed that a copy of the notice of cancellation be mailed to the defendant.

A settlement of accounts was made between the plaintiff company and the defendant agency each month. On October 3, 1967, the defendant agency received a settlement statement from the plaintiff in the usual form explaining the status of its accounts. The statement reflected that a credit had been issued in favor of Lizzie Short. This statement, by reference to a legend appearing on the reverse side, indicated that Mrs. Short's policy was cancelled.

The assistant manager of the agency testified that when she received the statement she could find nothing in her office files to indicate the policy had been cancelled; nor could she glean from her files any explanation for the credit having been issued. According to her testimony, Mrs. Phillips marked on the statement, "I can't locate why the credit". The record reveals that she took no further action relating to the policy.

In April, 1968, the defendant accepted the second installment payment from the insured. The premium was posted to the defendant's accounts receivable and was not remitted to the company.

Under the customary business practices between the plaintiff and the defendant, the defendant was not permitted to remit policy premiums to the plaintiff until they received a settlement statement from the company. The evidence reflects that, while it was the usual custom for the plaintiff to bill the defendant within sixty days, the defendant had issued policies which had been in effect for several years but for which the plaintiff had not billed the defendant.

On November 16, 1968, there was a fire in the Short home. Lizzie Short notified the defendant of her loss, and she was subsequently notified that the plaintiff was resisting payment of the claim. Thereafter, Lizzie Short obtained the assistance of counsel. In January, 1969, the insured received payment in the amount of $8,080.46 from the plaintiff. The plaintiff also paid an independent insurance adjustor $316.64 to process the claim.

The relationship between an agent and his insurance company is controlled by the law of agency. The agent must obey all reasonable instructions and must exercise reasonable care in carrying out its orders. *Virginia Surety Company v. Lee,* 55 Tenn. App. 501, 402 S.W.2d 714, 718; Annot., 35 A.L.R.3d 907, 912; 3 AM. JUR. 2d, *Agency,* Section 206, page 585. A violation of this duty by the agent involves the legal principle of simple negligence. 3 C.J.S., *Agency,* Section 162, page 46; Annot., 35 A.L.R.3d 792, 797. The undisputed receipt and inspection of the settlement statement by the assistant manager of the defendant agency in a normal course of business put the defendant agency on notice that the plaintiff insurance company had canceled the policy. By subsequently accepting a premium, the agency violated a duty placed on it by the notice and was thus negligent.

The court below announced in its opinion a criterion of gross negligence. This is error. A breach of duty by the agent in this respect is equivalent to simple negligence, and simple negligence, standing alone, is sufficient to

impose liability on the agent. 43 AM. JUR. 2d, *Insurance,* Section 169, page 226.

Although there are some questions concerning the adequacy of proof of the $316.64 payment to the independent insurance adjustor, the matter of this payment was introduced in evidence and we feel, especially in light of the existing law concerning the damages under fire insurance policies in *Maynard v. National Fire Insurance Company of Hartford,* 147 W.Va. 539, 129 S.E.2d 443, the plaintiff has adequately shown its damages consisting of $8,080.56 paid the insured, and $316.64 paid to the adjustor for processing the claim.

If the insurance agreement between the plaintiff and Mrs. Short had been in effect at the time of the fire loss due to the failure of the plaintiff's attempt to cancel, the defendant's negligence would not, however, make it liable. The negligence in that event could not be considered the proximate cause of plaintiff's loss; rather the proximate cause would be the existence of the original insurance agreement between the plaintiff and Mrs. Short. *Virginia Surety Company, Inc. v. Lee,* 55 Tenn. App. 501, 402 S.W.2d 714; 35 A.L.R.3d 907, 920. The resolution of these issues then revolve around the combined legal - factual question of whether Mrs. Short received notice of the cancellation. These are issues which must be resolved upon the trial of the case.

Under the provisions of some fire insurance policies, the mere mailing of notice to the insured by the insurance company is sufficient to cancel the insurance agreement. *Laxton v. National Grange Mutual Insurance Company,* 150 W.Va. 598, 148 S.E.2d 725. The second point of the syllabus of the *Laxton* case states:

> "Where an insurance policy provides that the policy may be cancelled by the insurance company by mailing to the insured at his address shown in the policy a written notice stating when not less than ten days thereafter such cancellation shall be effective, and that mailing of such notice shall be sufficient proof of notice, actual receipt of

such notice by the insured is not a condition precedent to cancellation and, in an action on the policy, cancellation may be established by proof of the mailing of such notice in accordance with the terms of the policy."

No language from Mrs. Short's insurance agreement was placed in evidence at trial, so we must assume on this appeal that there was no such cancellation provision. If the insurance agreement merely provided for cancellation upon notice to the insured, it, therefore, could only have been cancelled by Mrs. Short actually receiving notice of the cancellation. Annot., 64 A.L.R.2d 982, 988, 994-95; 43 AM. JUR. 2d, *Insurance,* Section 407, page 454. That the plaintiff insurance company placed the notice in the mail cannot be disputed. This created a presumption that Mrs. Short received the notice. 58 AM. JUR. 2d, *Notice,* Section 33, page 513. The presumption, of course, is not conclusive and could be rebutted by competent evidence. 58 AM. JUR. 2d, *Notice,* Section 27, page 507. Mrs. Short testified that she did not receive the notice. The mailing of the notice by the plaintiff together with a presumption it created on the one hand, and the testimony of Mrs. Short on the other hand, produced a factual issue which should have been resolved by the trial court.

This case was tried by the court without a jury. Applicable parts of Rule 52(a) of the Rules of Civil Procedure state:

"In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment. * * * If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein. * * * "

The trial court here filed an opinion which is permitted by Rule 52(a), but a proper finding of fact did not appear therein. The opinion of the court states:

"There is no evidence in this case that the notice of cancellation was received either by the insured

or by the defendant. The question, then, is whether or not the invoice submitted by the plaintiff to defendant containing a credit for a refund is sufficient notice to the defendant of the cancellation of the contract or whether, in the light of past dealings with the plaintiff, the defendant could reasonably believe that this represented some transaction involving its predecessor, Goode Insurance Agency. Obviously, when the renewal installment was paid and the new contract prepared, plaintiff was bound by the act of its agent and the insured was protected by a binding contract.

"I am of the opinion that the recision of a contract requires an affirmative act on the part of one of the parties to the contract, and the mere mailing of notice of a refund is not a sufficient recision of the contract. Obviously, the insured would have purchased other insurance to cover this property had she known or been advised of the cancellation. I can see no evidence of gross neglect on the part of the defendant in the light of the previous dealings which would lead me to believe that they would be responsible for the amount paid. I, therefore, conclude that the plaintiff should not recover in this case."

It is true that the trial court states, "There is no evidence in this case that the notice of cancellation was received either by the insured or by the defendant." This is not a finding of fact as required by Rule 52(a), but a comment on some of the evidence which we feel expresses an incorrect view of the evidence. The remaining parts of the court's opinion are conclusions of law.

There was some evidence that a copy of the cancellation notice was sent to the defendant by the plaintiff. The defendant, however, introduced rebuttal evidence in this regard. There was conclusive evidence that the notice of cancellation was mailed to the insured, and this created an evidentiary presumption of receipt by Mrs. Short. She denies its receipt.

The trial court observed and could evaluate Mrs. Short's testimony. It could have done this in its finding, resolving

the evidentiary issue of mailing by the company's agent as opposed to Mrs. Short's testimony of non-receipt of the notice. The court could have also resolved other factual issues concerning the copies of the cancellation and declination notices from the company to the agency and of damages.

Rule 52 (a) is mandatory and where the findings of fact and the conclusions of law are not separately made by the trial court or correctly appear in an opinion, the case may be remanded to the trial court for the purpose of complying with this Rule. *Commonwealth Tire Company v. Tri-State Tire Company,* 156 W.Va. 351, 193 S.E.2d 544; *Pettry v. Chesapeake and Ohio Railway Company,* 148 W.Va. 443, 135 S.E.2d 729; *Smith v. Dental Products Co.,* 168 F.2d 516 (7th Cir.); *Campbell v. Campbell,* 170 F.2d 809 (D.C.Cir.); *Paramount Pest Control Service v. Brewer,* 170 F.2d 553 (9th Cir.).

The purpose of this rule is to better enable the reviewing court to apply the law to the facts. See LUGAR AND SILVERSTEIN, WEST VIRGINIA RULES OF CIVIL PROCEDURE, 386 et seq.

However, because it is apparent from the opinion of the trial court that the court proceeded under a mistaken theory of negligence, this case is reversed and a new trial is awarded.

*Judgment reversed; new trial awarded.*